# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CARLA MCMICHAEL,  　　　　 *
Individually and as Parent,  　 *
Natural Guardian and Next  　 *
Friend of Her Minor Children,  *
BRITTANY MCMICHAEL and  *
TIFFANY MCMICHAEL,  　　　 *
　　　　　　　　　　　　　　 *
　　　Plaintiff,  　　　　　　 *
　　　　　　　　　　　　　　 *
v.  　　　　　　　　　　　　 *
　　　　　　　　　　　　　　 *
COBB COUNTY, GEORGIA  　 *
and RICHARD S. PANDIS,  　 *
　　　　　　　　　　　　　　 *
　　　Defendants.  　　　　　 *

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 1 4 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

CIVIL ACTION FILE NO.
**1:03-CV-1317 WBH**

## COMPLAINT

COMES NOW the Plaintiff and files this Complaint against the Defendants,

showing the Court as follows:

## INTRODUCTION

1.

This is a **42 U.S.C. §1983** action arising from the unreasonable seizure of the

Plaintiff's person  by a law enforcement officer in violation of the Fourth and

Fourteenth Amendments of the United States Constitution, as well as a deprivation

FORMS RECEIVED
Consent To US Mag. ✓
Pretrial Instructions ✓
Title 28 USC
Receipt Log

of the right of familial association enjoyed by the Plaintiff and her minor children under the First and Fourteenth Amendments. Plaintiff has also alleged pendant state law claims for negligence, false or malicious arrest, false imprisonment, and malicious prosecution, as well as violations of the Georgia constitution.

## JURISDICTION AND VENUE

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343, and the aforementioned constitutional and statutory provisions. Plaintiffs further invoke the pendant or supplemental jurisdiction of this Court to decide claims arising under state law pursuant to 28 U.S.C. §1367.

3.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 and other applicable law because the cause of action arose in Cobb County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia, and because Defendant Cobb County is domiciled within said District and Division.

4.

All of the parties herein are subject to the jurisdiction of this Court.

## PARTIES

5.

Plaintiff Carla McMichael is a citizen of the United States and a resident of Cobb County, Georgia who brings this action both individually and on behalf of her minor children, Brittany McMichael and Tiffany McMichael.

6.

Defendant Cobb County is a duly organized and existing county government under the laws of the state of Georgia which has the capacity to sue and be sued, which may be served through the Chairman of its Board of Commissioners, Samuel S. Olens, and which is subject to the jurisdiction of this Court.

7.

Defendant Richard S. Pandis is an individual who was, at all times relevant herein, a police officer employed by Defendant Cobb County who acted within the scope of his employment and pursuant to the policies and procedures of the County

as established by its Police Department and Department of Public Safety, who may be served by mail pursuant to F.R.C.P. 4(d), and who is subject to the jurisdiction of this Court.

8.

At all times relevant herein, the above-named Defendants acted under color of state law and on behalf of Cobb County.

## FACTUAL ALLEGATIONS

9.

On August 5, 2001 at approximately 7:00 p.m., Plaintiff McMichael was driving a 1990 Honda Accord automobile on McLain Road near her home in Acworth, Cobb County, Georgia.

10.

Said automobile was owned and insured by Plaintiff, but because it was seldom driven, she had failed to renew her vehicle registration for the current year and was displaying an expired license tag on the car.

11.

At said time and place, Defendant Pandis was driving a marked police car while on duty as a Cobb County police officer when he observed the expired license tag and signaled for Plaintiff McMichael to pull over to the side of the road.

12.

Plaintiff McMichael pulled her vehicle off to the side of the road and, when Defendant Pandis approached her car, admitted that she was aware of the expired tag and stated that as an attorney, she knew that the law required the vehicle to be properly registered.

13.

Defendant Pandis became argumentative, directed Plaintiff McMichael to get out of the car, and informed her that he was impounding the vehicle, instructing her to call someone on her cell phone to come and pick her up.

14.

Plaintiff's minor daughter, Brittany McMichael, was a passenger in the car at the time of this incident.

15.

Pursuant to Defendant Pandis' instructions, Plaintiff McMichael called her

boyfriend, Randy Davis, to come and pick her up, and Mr. Davis arrived within

minutes with Plaintiff's other minor daughter, Tiffany McMichael.

16.

Plaintiff McMichael, along with her daughters and Mr. Davis, began to

transfer the contents of the impounded Honda to the Mercedes which Mr. Davis had

driven to the scene at Defendant Pandis' request.

17.

Defendant Pandis became increasingly agitated after Mr. Davis' arrival, and

Mr. Davis and Defendant Pandis began to exchange words.

18.

At one point when Plaintiff McMichael was standing by the Mercedes

with Mr. Davis and her daughters, Defendant Pandis–apparently believing that Ms.

McMichael was positioned off camera where the video could not show her actual

conduct--falsely accused Plaintiff McMichael of attempting to leave the scene and threatened to have her arrested.

19.

Plaintiff McMichael replied that she had no intention of leaving the scene and walked toward Defendant Pandis, who became more agitated and proceeded to jab his finger into her chest.

20.

In exasperation, Plaintiff McMichael raised her arms above her head and dropped her car keys on the ground to visually demonstrate that she had no intention of fleeing or resisting.

21.

Defendant Pandis then declared that Plaintiff McMichael was under arrest for disorderly conduct, and he handcuffed her in front of her children and placed her in the back of his patrol car.

22.

Plaintiff's minor daughters, Brittany and Tiffany McMichael, began to cry hysterically at the sight of their mother being arrested by Defendant Pandis.

23.

Mr. Davis and Defendant Pandis began to argue, and Defendant Pandis threatened to throw his "ass" in jail as well.

24.

Defendant Pandis ordered Mr. Davis to leave the scene and then became physically aggressive toward him when Mr. Davis expressed reluctance to leave Plaintiff McMichael alone with the officer.

25.

Mr. Davis called 911 on his cell phone and requested that a police supervisor be called to the scene.

26.

Both the tape recording of the 911 call and the videotape made by the onboard video camera in Defendant Pandis' car reveal that Defendant Pandis was using profane, abusive and discourteous language during this incident.

27.

Meanwhile two (2) other Cobb County police officers--one of them being the supervisor requested by Mr. Davis--arrived at the scene.

28.

Mr. Davis, who had eventually driven away in the Mercedes after being physically and verbally threatened by Defendant Pandis, returned to the scene with Plaintiff McMichael's daughters after the other officers arrived.

29.

Defendant Pandis' supervisor listened to everyone involved in the incident and viewed the videotape from Defendant Pandis' patrol car after Defendant Pandis improperly stopped the video camera from recording while the incident was still in progress.

30.

After reviewing the incident, the supervisor advised Defendant Pandis that the situation had gotten out of hand and that he should release Plaintiff McMichael because she had not done anything rising to the level of disorderly conduct, but that it was his decision as the arresting officer.

31.

Defendant Pandis then told the supervisor that he could not release Plaintiff McMichael because she was a lawyer and she would go internal affairs, but this conversation–which took place in Defendant Pandis' car–was not recorded because Defendant Pandis had already compromised the videotape by removing it from the camera.

32.

Now that the video camera was no longer rolling, Defendant Pandis offered to release Plaintiff McMichael on the spot if she would apologize for being disrespectful, agree not to go to internal affairs, and agree to turn herself in at the police station the the following day.

33.

In order to defuse the situation, to keep from going to jail, and to allow herself return to her hysterical children, Plaintiff McMichael apologized and agreed to do what Defendant Pandis had proposed.

34.

Defendant Pandis then released Plaintiff McMichael and told her to turn herself in at the police station the next day.

35.

That evening, Defendant Pandis gave false testimony before a Magistrate to obtain a warrant for Plaintiff McMichael's arrest on charges of obstruction of an officer (O.C.G.A. 16-10-24(a)), disorderly conduct (O.C.G.A. 16-11-39), and failure to register vehicle (O.C.G.A. 40-2-20(c) ).

36.

In order to obtain a warrant on the charge of disorderly conduct, Defendant Pandis falsely swore that Plaintiff McMichael had "act[ed] in a violent and tumultuous manner toward Officer R.S. Pandis by placing him in reasonable fear of

the safety of his life, limb or health," when in fact it is obvious from the videotape of the incident that there was no probable cause or arguable probable cause to support such a warrant in that the Plaintiff never acted in such a violent or tumultuous manner as to put a reasonable police officer in fear of his life, limb or health.

37.

In order to obtain a warrant on the charge of obstruction, Defendant Pandis falsely swore that Plaintiff McMichael had "obstruct[ed] or hinder[ed] Officer Pandis in the lawful discharge of his official duties by refusing to listen to his verbal commands to stay in her vehicle and that she could not leave the scene", when in fact it is obvious from the videotape of the incident that Plaintiff McMichael never refused to stay in her vehicle nor attempted to leave the scene.

38.

There was probable cause to charge Plaintiff for failure to properly register her vehicle, but the law does not permit incarceration for that offense and thus it could not justify an otherwise improper custodial arrest.

39.

Rather than permitting Plaintiff to turn herself in as agreed, Defendant Pandis

caused the arrest warrant to be executed by the Cobb County Sheriff's fugitive squad,

which forcibly arrested Plaintiff McMichael at her home early the following morning

as she was getting her children ready for school.

40.

Rather than being permitted to turn herself in later that day as Defendant

Pandis had promised, Plaintiff McMichael--who is an attorney employed by the

United States government--was handcuffed and marched down the street in front of

her neighbors and children and taken to jail in a police vehicle.

41.

Defendant Pandis' decision to have the sheriff arrest Plaintiff McMichael was

in retaliation for certain inflammatory comments which Mr. Davis had made to the

911 operator at the time of the incident, which criticized police officers and expressed

Mr. Davis' belief that Defendant Pandis' conduct toward Plaintiff McMichael was

racially motivated.

42.

Plaintiff McMichael was not present during nor aware of Mr. Davis' remarks to the 911operator, and it was malicious and improper for Defendant Pandis to penalize Plaintiff  McMichael for remarks made by Mr. Davis outside of her knowledge and presence.

43.

Like Plaintiff McMichael, Defendant Pandis was not aware of Mr. Davis' remarks to the 911 operator at the time they were made, and he did not learn of them until obtaining a copy of the 911 tape after the incident, which motivated him to continue rather than drop his prosecution of Plaintiff McMichael.

44.

As a result of being arrested without probable cause or arguable probable cause pursuant to the false warrant which had been unlawfully and unreasonably obtained by Defendant Pandis, Plaintiff McMichael was falsely imprisoned in the Cobb County Jail for several hours on August 6, 2001, until being released by order of Cobb State Court Judge Mary Staley.

45.

After Plaintiff McMichael was released from jail, she made an internal affairs

complaint to Defendant Cobb County against Defendant Pandis, pointing out that

Pandis had arrested her without justification, that he had abused his authority by

conditioning her release upon her agreement to not go to internal affairs, that he had

compromised the integrity of the videotape by removing it from the camera while the

incident was still in progress, and that he had been verbally abusive toward her.

46.

Despite the fact that the internal affairs investigation revealed that Defendant

Pandis had violated departmental rules regarding profanity, courtesy, and interference

with the operation of patrol car video cameras, the official conclusion of Defendant

Cobb County's internal affairs investigation was that the conduct of Defendant Pandis

had been "in accordance with the standards of performance demanded of members

of [his] department."

47.

Defendant Pandis had previously been the subject of another internal affairs

complaint arising from a traffic stop in which he had also violated departmental rules regarding interference with video camera operation, but in that instance as well, Defendant Cobb County had approved and endorsed his improper conduct.

48.

Despite the fact that both the videotape of the incident and the recording of the 911 call made by Randy Davis proved that Plaintiff McMichael's complaints about Defendant Pandis were substantially accurate, and despite the fact that this was not the first time that Defendant Pandis had interfered with the operation of a video camera during an incident which would later result in a complaint against him, Defendant Cobb County ratified and endorsed Defendant Pandis' misconduct and concluded that his actions were pursuant to official county policy.

49.

By reason of the false testimony of Defendant Pandis and his refusal to drop the frivolous charges which he had brought against her, the prosecution of Plaintiff McMichael remained pending until August 16, 2002, when it was ultimately terminated in her favor because the court entered an order of Nolle Prosequi

dismissing the charges of obstruction and disorderly conduct upon which she had been jailed on August 6, 2001.

50.

In order to defend herself against the frivolous obstruction and disorderly conduct charges brought against her by Defendant Pandis, Plaintiff McMichael found it necessary to hire a criminal defense attorney and to incur legal fees for such representation.

51.

As a result of the traumatic effect which Plaintiff McMichael's arrest and incarceration had upon the Plaintiff and her children, the McMichael family found it necessary to attend family counseling sessions with a psychotherapist and to incur expenses for such therapy.

## THEORIES OF RECOVERY

### 52.

The aforementioned misconduct of Defendant Pandis constituted an unreasonable seizure of the Plaintiff's person in violation of the Fourth Amendment of the United States Constitution.

### 53.

The aforementioned conduct of the Defendants served to deprive the Plaintiff's minor children, Brittany and Tiffany McMichael, of their right to familial association with their mother as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

### 54.

At all times relevant herein, Defendant Pandis acted pursuant to the customs, policies, and practices of Defendant Cobb County, and accordingly, the County is liable for any and all federal constitutional violations committed against the Plaintiff and her children by the Defendants.

55.

Said customs, policies, and practices of Defendant Cobb County and/or the deliberate indifference of the County and its policymakers in failing to develop and implement appropriate customs, policies, and practices were the moving force behind the constitutional violations complained of by the Plaintiff.

56.

Specifically, Defendant Cobb County maintained a defective custom, policy or practice of permitting its police officers, and particularly Defendant Pandis, to violate written standards of conduct, including rules purporting to forbid abuse of arrest power, abusive and profane language, false statements, tampering with evidence, and interfering with video camera operations, with the result being that the actual custom, policy, or practice of the county is to encourage rather than prohibit such conduct and thereby causing officers such as Defendant Pandis to violate the constitutional rights of citizens in accordance with such actual custom, policy or practice .

57.

The actions of Defendant Pandis were ratified and endorsed by Defendant Cobb County and thus represent official county policy, with the result being that Defendant Cobb County is liable for the actions of Defendant Pandis to the extent that his actions caused the Plaintiff and her children to be deprived of their constitutional rights.

58.

The aforementioned acts and omissions of Defendant Pandis also constitute the torts of negligence, false or malicious arrest, false imprisonment, and malicious prosecution under Georgia law, as well as an unreasonable seizure, unlawful detention, and abuse during the course of an arrest in violation of the applicable provisions of Article I, Section I of the Georgia Constitution.

59.

The law being clearly established in 2001 that a police officer may not give perjured testimony in support of an application for an arrest warrant or otherwise cause a person to be arrested without arguable probable cause, Defendant Pandis is not entitled to qualified immunity under federal law.

60.

Defendant Pandis having acted willfully and out of spite to cause harm to the Plaintiff, he is not entitled to official immunity under Georgia law.

61.

As a direct and proximate result of the above described conduct of the Defendants, Plaintiff Carla McMichael was unreasonably and unlawfully arrested without probable cause, was falsely and unlawfully imprisoned and deprived of her liberty, was forced to endure physical retraints, severe mental pain and suffering including but not limited to embarrassment, public humiliation, and fear for the wellbeing of her children which is expected to continue into the future, and was forced to incur special damages including but not limited to necessary expenses for legal representation, psychological counseling, and a bail bondsman, for which the Defendants are liable to thePlaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

62.

As a direct and proximate result of the above described conduct of the Defendants, Plaintiff's minor children Brittany McMichael and Tiffany McMichael

were forced to watch their mother being handcuffed and arrested on two (2) consecutive days, were separated from their mother and deprived of their right to familial association while she was in custody, and were forced to endure mental pain and suffering and emotional distress as well as to experience physical symptoms such as bedwetting resulting therefrom, for which the Defendants are liable to thePlaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

63.

The aforementioned misconduct of Defendant Pandis arose to such a level of bad faith, willfulness, and reckless disregard for the consequences as to authorize the imposition of punitive damages against him to the extent permitted by federal and state law.

64.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

a)   That this action be tried by a jury;

b)   That judgment be entered in favor of the Plaintiff
     and against the Defendants in an amount to be
     determined by the enlightened conscience of fair and
     impartial jurors to the extent allowed by law;

c)   That the Plaintiff be awarded attorney's fees and
     reasonable expenses of litigation;

d)   That all costs of this action be taxed against the
     Defendants; and,

e)   That the Court award any additional or alternative
     relief as may be deemed appropriate under the
     circumstances.

                          Respectfully submitted,

                          _____
                          CRAIG T. JONES
                          Ga. Bar No. 399476
                          Attorney for Plaintiff

CRAIG T. JONES, P.C.
P.O. Box 1065
Decatur, GA 30031-1065
(404) 373-6315

23